ARTHUR BENSON AND FRANK BISSELL, PLAINTIFFS, *v.*
L. C. WISEMAN AND DONALD AXLUND, DEFENDANTS
AND RESPONDENTS.
L. C. WISEMAN AND DONALD AXLUND, THIRD PARTY
PLAINTIFFS AND RESPONDENTS, *v.* W. A. HALL, THIRD PARTY
DEFENDANT AND APPELLANT.

No. 10744.
Submitted September 10, 1964. Decided January 26, 1965.
Rehearing denied May 5, 1965.
401 P.2d 78.

Johnson, Johnson & Alexander, John A. Alexander (argued), Keith P. Johnson (argued), Butte, for appellant.

Wiggenhorn, Hutton, Schiltz & Sheehy, John C. Sheehy (argued), Billings, William Dee Morris, Butte, for respondents.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal from a judgment rendered in favor of the respondents, L. C. Wiseman and Donald Axlund, and against the appellant, W. A. Hall, in the district court of the fifth judicial district of the State of Montana, in and for the County of Beaverhead, the Honorable Philip C. Duncan, Judge presiding, which judgment is entered upon a jury verdict against W. A. Hall in the sum of $3,000 actual damages, and exemplary damages of $1.00. The original plaintiffs, Benson and Bissell, had not taken an appeal and are therefore not a part of these proceedings.

The case involves certain mining and mill equipment and machinery plus tailings taken by the appellant Hall and Benson and Bissell from a millsite formerly owned by the Elkhorn-Beaverhead Mining Company. During the early 1920s the Elkhorn-Beaverhead Mining Company operated various claims on the upper reaches of the Wise River country located in Beaverhead County.

In 1959, respondent Wiseman, a retired mining engineer who developed mining properties, went to Dillon, Montana, from his home in Cody, Wyoming, to investigate the records concerning the Elkhorn-Beaverhead Mining Company. There he found from the records of the county assessor that the taxes were delinquent on this property and he obtained a tax deed for same by the payment of $3,179.83. The tax deed was issued to the Ben Mining Company, which in turn quitclaimed the property to Wiseman. For all intents and purposes Mr. Wiseman was the Ben Mining Company. The tax deed in question covered the Snow Drop Lode, the St. Louis Lode, a one-fourth interest in the Mono Lode, all patented mining claims, and the

patented Mono Mill Site. The tax deed and the quitclaim deed from the Ben Mining Company to the respondent Wiseman were recorded in Beaverhead County. It later developed that the Elkhorn Mill was not located on any of the four claims in question, nor was it affixed to any of the claims in question. However, the respondents Wiseman and Axlund, (hereinafter called respondents) predicate their ownership to the mill on two grounds: that the mill was a fixture to the Mono Lode claim, which was conveyed by the tax deed even though not physically located upon their claim; and, that a location was made by them of the Safety Lode claim upon the ground on which the mill is located.

In describing the area in which the mill and the claims are located, the respondent Wiseman described it as being in a rather steep terrain. The working levels of the claim were almost a thousand feet higher than the mill and in the old days they used to have a tramway to bring the ore down to the mill. The tramway became a troublesome affair during the winter time, so in order to get the ore out they drove a working tunnel into the mountain. Then they drove a raise to the upper level so they could get the ore from there and take it to the mill under cover rather than have it come down by a cable tram as in the old days. Testimony revealed that most of the ore was developed on a higher level than that on which the mill stood. Mr. Wiseman testified that at the time the Elkhorn was operating there were approximately 80 claims being operated and all of these claims put their ore through the mill; that the mill was not a custom mill but was operated solely for the Elkhorn Mining Company's properties.

In September of 1961, respondents, Wiseman and Axlund, partners in this operation, entered into negotiations with Frank Bissell and Arthur Benson of Butte, Montana, for the sale of the property in question. These negotiations culminated in a contract and agreement entered into on September 11, 1961, which contained the following provisions:

"For and in consideration of the terms of the conditions hereinafter set forth the seller agrees to sell, convey and release all of his right, title and claim to the following described property: —all the patented land together with all buildings and structures thereon, formerly known as the Elkhorn-Beaverhead Mines located in Beaverhead County, Montana, as transferred to him under Beaverhead County tax deed No. 99246 which transfer is now a matter of record at the County Seat of Beaverhead County, Montana. No other guarantee of title is requested or given.

"Full sale price of the above holdings to be transferred under this contract and agreement, to the buyers by the seller, is $5,000. The buyers agree to pay to the seller the sum of $2,500 on or before the 21st day of September, 1961, and the further sum of $2,500 on or before the 1st day of March, 1962. The above payments will constitute full and final payment by the buyers to the seller under this contract and agreement.

"It is further agreed, by all parties hereto, that buyers may move onto the premises and start salvage operations immediately *but are not to remove materials of any description from the premises until full amount of the initial $2,500 payment has been made to the seller.*" Emphasis supplied.

The evidence clearly shows that prior to September 21, 1961, Benson and Bissell went on the premises and removed certain mining equipment from the mill contrary to the above-quoted provision of their agreement. In addition, it developed that they made a separate agreement to sell certain pieces of this equipment to Harold T. Allen, a well-known figure in the Beaverhead area and that Allen gave them a check in the amount of $2,500. The check was drawn on an account entitled Alumont, Inc., signed by Harold T. Allen, dated September 18, 1961. Accompanying this check was a letter dated September 10, 1961, stating:

"Please find our check in the amount of $2,500 as agreed. Our money will be in the Bank at least by Wednesday morning,

check is being mailed out of Idaho Falls today, so you can use this tomorrow."

Benson and Bissell endorsed same and forwarded it to respondent Wiseman at Cody, Wyoming, on that date, September 18th. Not having received payment as per agreement, Wiseman with his partner Axlund came to Beaverhead County, found that Benson and Bissell had removed some of the property already and went to Butte on the morning of September 21st to discuss the problem with them. They then found that the check had been forwarded to Cody, Wyoming. Mr. Wiseman called and had his secretary get the check and then called the bank and found that there was not sufficient funds in the bank to cover the amount of $2,500.

Testimony also shows that at the meeting in Butte, Montana, on the morning of the 21st Mr. Benson stated he would get $2,500 by noon but he did not show up by 1:00 p.m., so Wiseman and Axlund went immediately to Beaverhead County where they met Benson and Bissell on the street about 4:00 p.m. that afternoon. Exactly what happened at the meeting the afternoon of the 21st in Dillon is in conflict but Benson and Bissell say they informed Wiseman that they had bought something Wiseman did not have the right to sell; that the mill, equipment and buildings on same, as it appears from the record, were not located on any of the claims they purchased from Wiseman. They stated that they told him they had stopped payment on the check and that the deal was off. Concerning the stop payment order, it was interesting to note that an officer of the bank testified that the stop payment was not made until sometime in December, 1961.

Benson and Bissell testified that they took two men and went up to the Elkhorn area and located the mill which was about a quarter of a mile from the town of Cooliage. This Location Declaratory Statement—Millsite, was filed in Beaverhead County Courthouse on October 6, 1961.

Mr. Axlund testified that on September 27, 1961, along with

Mr. Wiseman, he went to the area in question and staked out a claim called the Safety Lode Mining Claim, and the notice of the location of the claim was filed in the office of the Clerk and Recorder of Beaverhead County, Dillon, Montana, on the same date. This mining claim encompasses nearly the same area claimed by Benson and Bissell in their Cooliage Millsite claim but neither party saw each other while in the area though Benson and Bissell said they stayed there two days. Oddly enough, neither party saw evidence of the other's claim while staking out their claim.

Extensive testimony was taken on both sides as to the method and names used in staking out these claims and all of this testimony was available for the jury's consideration. During the month of October, the testimony shows that Benson and Bissell proceeded to dismantle much of the mill. Later, George Porte, President of Caird Engineering of Helena, Montana, came on the premises looking for some mining equipment after having contacted Mr. Wiseman. As a result of Mr. Porte's appearance, Benson and Bissell, on November 2, 1961, filed a complaint against Wiseman and Axlund in the District Court of Silver Bow County praying for damages plus a restraining order against Wiseman and Axlund.

On November 10, 1961, the district court issued an order to show cause and a temporary restraining order restraining Wiseman and Axlund from removing, hypothecating, selling, leasing or in any manner destroying or taking from the plaintiff's property any lumber, machinery or other mining equipment.

Thereafter, and on November 20, 1961, a motion for change of venue was filed by Wiseman and Axlund asking that the cause be removed from Silver Bow County to Beaverhead County, and on November 21, 1961, a restraining order pendente lite was issued by the District Court of Beaverhead County ordering plaintiffs, Benson and Bissell to desist and

refrain from removing or disposing of any material from the mill during the pendency of this appeal.

From the time respondent Wiseman obtained a tax deed for the patented mining claims in question until the present time he has paid the taxes to Beaverhead County not only for the claims but for the buildings and equipment.

This rather detailed explanation without the mention of the appellant, W. A. Hall, a mining equipment operator of Helena, Montana, is necessary, for on or about September 15, 1961, Benson and Bissell contacted Hall, informed him they had a deal with Wiseman on some equipment and ore to be hauled and they rented two trucks, and a cat loader to start hauling ore and fix the road. Hall knew at that time there was some kind of a deal with Wiseman where Benson and Bissell were going to buy the Elkhorn Mine, but stated he did not pay too much attention to it because they were going to use his trucks to haul the ore and he was to get so much a ton for the hauling. Hall testified that about the end of September he talked to them about the use of the trucks and they said they were going to use them; that they had found out Wiseman did not own the equipment, did not own the property and that it was open ground, and they wanted Hall to go in with them. He also stated that he sought legal advice and made a private investigation of his own which led him to believe the mill was on open ground and did not belong to anyone. At that time, he decided not to go into any partnership with Benson and Bissell, but in the early part of October, they offered him the property referred to in the bill of sale for $2,000 and after checking it over, an agreement was made with them on November 1, 1961, to purchase certain mining equipment out of the building to-wit: two Telsmith gyratory No. 6 crushers, 14 James Concentration tables complete, three Dohr classifiers, and a Hardinge 6 x 8 ball mill No. 1473, located at the Cooliage Millsite, at Elkhorn Mine, Beaverhead County, Montana, for the sum of $1.00 and other consideration. He stated he paid $2,000 to Benson

and Bissell for the property in question, and that his employees removed the machinery he had purchased, with the exception of one classifier, from the mill. On cross-examination he admitted that after seeing the notice of location of the mineral claims that was posted by Axlund he did remove one additional piece of equipment, but stated that this notice was posted behind the building and was not easily seen by anyone working around the premises, and that by the time they saw the notice they had removed all the property at the mill.

Mr. Hall also admitted on cross-examination that in addition to the machinery he had purchased listed in the bill of sale, he had removed some fourteen ton of concentrates from the premises, as they had the use of his trucks and cat loader for nearly two months and could not pay him anything so they gave him the concentrates and ore. Ten days after signing the bill of sale, Mr. Hall testified that he disposed of the property purchased by him listed in the bill of sale from Benson and Bissell to one Fouse in the City of Butte. While Mr. Hall denied that he had anything to do with the removal of property during the month of September there is no question his trucks and his cat were used in the removal process.

As can be seen by this and other testimony in the record, the ownership of Benson and Bissell was predicated upon an alleged location by them on September 27, 1961, of the Elkhorn Mill. The ownership of the mill by Wiseman and Axlund was predicated on two grounds: (1) the mill was a fixture to the Mono Claim, as had been conveyed by tax deed; and (2) the location of the Safety Lode claim on ground upon which the mill was situated.

The appellant Hall bases his appeal on the proposition Wiseman and Axlund failed, as a matter of law, to show they had any ownership in the mill property, or, if they did have any claim of ownership, they owned it jointly with other unknown persons, hence, there was a failure to join necessary parties.

It stands that if Benson and Bissell had no title or interest

to any claim or possessory right to the property, Hall had no title or right of title either.

While the appellant sets forth some eleven specifications of error, they can be as set forth in his brief, summed up under two principal arguments.

1. That the respondents had failed as a matter of law to show they had any ownership in the said mill property; and

2. That if they owned it jointly with other unknown persons who had not been made parties to the action that such parties were indispensable.

While appellant Hall does not base his claim of title to either Benson or Bissell, the majority of his specifications attacked the validity of the ownership of the mill property by the respondents. Therefore we will direct our attention to the discussion of the two statutes covering fixtures to real property, sections 67-209 and 67-210, R.C.M.1947, which provide:

"67-209. *Fixtures.* A thing is deemed to be affixed to land when it is attached to it by roots, as in the case of trees, vines or shrubs; or imbedded in it, as in the case of walls; or permanently resting upon it as in the case of buildings; or permanently attached to what is thus permanent as by means of cement, plaster, nails, bolts, or screws."

"67-210. *Fixtures attached to mines.* Sluice boxes, flumes, hose, pipes, railway tracks, cars, blacksmith shops, mills, and all other machinery or tools used in working or developing a mine, are to be deemed affixed to the mine."

It is obvious from the reading of these two statutes that the controlling word in interpreting section 67-210, covering property or fixtures attached to mines, is the word "used." The uncontradicted testimony is that while the mill rested upon an unpatented mining claim, it was not a custom mill and was used solely by the Elkhorn-Beaverhead Mining Company in the days of operating the patented and unpatented claims. Neither the appellant nor Benson or Bissell produced any testimony that

438

the mill was used for any other purposes during its operation other than that as herein set forth.

In considering the question of whether or not this property and the machinery in the building is a fixture, this court in the case of Yellowstone Pipe Line Co. v. State Board of Equalization, 138 Mont. 603, 358 P.2d 55, quoting from Montana Electric Co. v. Northern Valley Mining Co., 51 Mont. 266, 271, 153 P. 1017, 1018, set forth the following criteria in considering when personal property becomes a fixture as:

" '* * * (1) Whether what would otherwise be personal property has become a fixture by reason of its attachment to the soil is primarily a question of intention on the part of the person attaching it; (2) the attachment in the manner indicated in our Code sections above raises a presumption that the one who made the attachment intended the thing affixed to become a part of the realty; this presumption, however, is a disputable one; (3) as a general rule, the manner in which the attachment is made, the adaptability of the thing attached to the use to which the realty is applied, and the intention of the one making the attachment determine whether the thing attached is realty or personalty.' "

In section 67-210, supra, in applying this criteria to the special statute on fixtures on mining property, clearly the use made of the mill showed the intention of the then owners to consider it, the mill, the buildings and machinery, as attached. Here the presumption is that the property is affixed and a part of the real property. It is a rebuttable presumption, but having failed to rebut it, the appellant fails to sustain the burden overruling the district court in his proof that the mill was not a part of the mine fixtures under section 67-210. The court properly held that in acquiring the patented lode claims in question, the Snow Drop, the St. Louis, and the Mono, the mill and machinery and other property all was used in working and developing these claims. Therefore, the mill and the machinery and other property and fixtures to such patented

claims, although physically located on an adjacent area, belong to respondents.

Concerning appellant's second specification of error, that of the indispensable parties, the argument must fail because they did not point out to the court who the indispensable parties were. Respondent Wiseman admitted ownership of only one-fourth of the Mono Lode Claim but there was no proof produced as to who, if anyone, owned the other three-quarters interest in this claim. So far as the court was concerned there was no record produced of their name. There was no record in Beaverhead County's tax books of the other owner or owners of the three-quarters interest to this claim. It was impossible to have a joinder of necessary parties when said parties were unknown. The respondent Wiseman, insofar as the tax records of Beaverhead County are concerned, is the person who pays the taxes on all of the property in question, and it was the duty of the appellant to bring forth any other known parties if he wanted to prevail on this specification of error.

Such being the case, by reason of our findings, it is unnecessary for us to discuss the cross-assignments of error brought by respondent in this matter. The finding of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICES CASTLES, DOYLE and ADAIR concur.